UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

THEODORE RIDER, JESSE W. SMITH, and GILLES   :
BOEVI, individually and on behalf of other similarly   :
situated individuals,   :
  :    Case No. 1:22-cv-01602
                                      Plaintiffs,   :
  :
                   v.   :
  :
UPHOLD HQ INC., a South Carolina corporation, and   :
JOHN DOES 1–10, individuals,   :
  :
                              Defendants.   :

-----------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UPHOLD HQ, INC.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

**MEISTER SEELIG & FEIN LLP**
Benjamin D. Bianco, Esq.
Caitlin R. Trow, Esq.
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Fax: (212) 655-3535
Email: bdb@msf-law.com
         crt@msf-law.com

*Counsel for Defendant Uphold HQ Inc.*

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

SUMMARY OF RELEVANT FACTS ................................................................... 3

LEGAL STANDARD ............................................................................................ 6

ARGUMENT ........................................................................................................ 7

I.  PLAINTIFFS' CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION (COUNT SEVEN) MUST BE DISMISSED ........................ 7

    A.  Plaintiffs Fail to Allege a Special Relationship .................................... 7

    B.  Plaintiffs' Claim is Barred by the Economic Loss Doctrine .............................. 7

    C.  Plaintiffs Fail to Allege Reliance ..................................................... 8

II.  PLAINTIFFS' CAUSE OF ACTION FOR BREACH OF WARRANTY, EXPRESS AND IMPLIED (COUNT SIX) MUST BE DISMISSED ............................. 9

    A.  New York Law Does Not Recognize Breach of Warranty Claims Arising from the Provision of Services ........................................................... 9

    B.  Uphold Disclaimed All Implied Warranties ................................... 11

    C.  Plaintiffs Fail to Specify the Terms of the Express Warranties Upon Which They Purportedly Relied ........................................................ 12

    D.  Plaintiffs' Express Warranty Claim is Duplicative of Their Contract Claim .... 13

III.  PLAINTIFFS' CAUSE OF ACTION FOR NEGLIGENCE *PER SE* (COUNT TWO) MUST BE DIMISSED ................................................... 14

    A.  The Statutes Plaintiffs Rely Upon for This Claim Lack a Private Right of Action ............................................................................ 14

IV.  PLAINTIFFS' CAUSE OF ACTION FOR VIOLATION OF GBL § 349 (COUNT THREE) MUST BE DIMISSED ........................................ 15

    A.  Plaintiffs Have Not Plausibly Alleged Materially Deceptive or Misleading Conduct ........................................................................ 15

    B.  Violations of Other Statutes with No Private Right of Action Do Not Support Plaintiffs' GBL § 349 Claim ........................................... 18

C.    Plaintiffs' GBL § 349 Claim is Duplicative of Their Contract Claim ............... 20

V.    PLAINTIFFS' CAUSE OF ACTION FOR UNJUST ENRICHMENT (COUNT
      FOUR) MUST BE DIMISSED .................................................................................... 21

      A.    Plaintiffs Fail to Allege They Received Less Than That for Which They
            Bargained ........................................................................................................ 21

VI.   PLAINTIFFS' CAUSE OF ACTION FOR NEGLIGENCE (COUNT ONE) MUST
      BE DIMISSED ............................................................................................................ 22

      A.    Plaintiffs' Negligence Claim is Duplicative of Their Contract Claim ............... 22

VII.  PLAINTIFFS' CAUSE OF ACTION FOR BREACH OF CONTRACT (COUNT
      FIVE) MUST BE DIMISSED ..................................................................................... 23

      A.    Plaintiffs Fail to Specify Any Contractual Provision That Uphold Allegedly
            Breached .......................................................................................................... 23

CONCLUSION .................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Abdale v. North Shore Long Island Jewish Health System, Inc.*,
    49 Misc. 3d 1027 (N.Y. Sup. Ct. 2015) ........................................................................ 15, 16, 19

*Aegis Prods., Inc. v. Arriflex Corp. of Am.*,
    25 A.D.2d 639 (1st Dep't 1966) ............................................................................................ 10

*Arthur Props., S.A. v. ABA Gallery, Inc.*,
    2011 WL 5910192 (S.D.N.Y. Nov. 28, 2011) ...................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 6, 8

*B.C.F. Oil Ref. v. Consolidated Edison Co.*,
    982 F. Supp. 302 (S.D.N.Y. 1997) ...................................................................................... 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 6

*Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc.*,
    712 F.3d 705 (2d Cir. 2013) ................................................................................................ 6

*Benjaminov v. Republic Ins. Group*,
    241 A.D.2d 473 (2d Dep't 1997) ........................................................................................ 15

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A..*,
    949 F. Supp. 2d 486 (S.D.N.Y. 2013) ................................................................................ 23

*Bigio v. Coca-Cola Co.*,
    675 F.3d 163 (2d Cir. 2012) ................................................................................................ 8

*Bilinski v. Keith Haring Found*,
    96 F. Supp. 3d 35 (S.D.N.Y. 2015) .................................................................................... 22

*Buonasera v. Honest Co.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016) ................................................................................ 21

*CBS Inc. v. Ziff-Davis Pub. Co.*,
    75 N.Y.2d 496 (1990) ........................................................................................................ 13

*Citicorp Leasing, Inc. v. Kusher Family Ltd. P'ship*,
    2006 WL 1982757 (S.D.N.Y. Jul. 14, 2006) ...................................................................... 11

*Cnty. of Suffolk. v. Long Island Lighting Co.*,
    728 F.2d 52 (2d Cir. 1984) ............................................................ 8

*Cohen v. Ne. Radiology P.C.*,
    2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) ........................................ 14

*Conboy v. AT&T Corp.*,
    84 F. Supp. 2d 492 (S.D.N.Y. 2000) ............................................... 19

*Conboy v. AT & T Corp.*,
    241 F.3d 242 (2d Cir. 2001) ......................................................... 19

*Corcino v. Filstein*,
    32 A.D.3d 201 (1st Dep't 2006) .................................................... 16

*DeAngelis v. Corzine*,
    17 F. Supp. 3d 270 (S.D.N.Y. 2014) ............................................... 15

*DeBlasio v. Merrill Lynch & Co.*,
    2009 WL 2242605 (S.D.N.Y. July 27, 2009) ................................... 9, 22

*Deutsch v. JPMorgan Chase*,
    2019 WL 4805689 (S.D.N.Y. Sept. 30, 2019) ................................... 22

*Ellinghaus v. Educ. Testing Serv.*,
    2016 WL 8711439 (E.D.N.Y. Sept. 30, 2016) ................................... 18

*Emmons v. City Univ. of New York*,
    715 F. Supp. 2d 394 (E.D.N.Y. 2010) .............................................. 9

*Fero v. Excellus Health Plan, Inc.*,
    236 F. Supp. 3d 735 (W.D.N.Y. 2017) ............................................. 9

*Fleisher v. Phoenix Life Ins. Co.*,
    858 F. Supp. 2d 290 (S.D.N.Y. 2012) .......................................... 20, 21

*Frankel-Ross v. Congregation OHR Hatalmud*,
    2016 WL 4939074 (S.D.N.Y. Sept. 12, 2016) ................................... 15

*Gillespie v. St. Regis Residence Club*,
    343 F. Supp. 3d 332 (S.D.N.Y. 2018) .............................................. 24

*Goldemberg v. Johnson & Johnson Consumer Cos. Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................ 12

*Goldin v. Smith & Nephew, Inc.*,
   2013 WL 1759575 (S.D.N.Y. Apr. 24, 2013) ................................................ 12

*Gordon v. Hain Celestial Grp., Inc.*,
   2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) .................................................. 8

*Gutarts v. Fox*,
   104 A.D.3d 457(1st Dep't 2013) ................................................................. 10

*Hekmat v. U.S. Transportation Security Administration*,
   247 F. Supp. 3d 427 (S.D.N.Y. 2017) .......................................................... 24

*Horowitz v. Stryker Corp.*,
   613 F. Supp. 2d 271 (E.D.N.Y. 2009) ..................................................... 15, 17

*Hydro Invs., Inc. v. Trafalgar Power Inc.*,
   227 F.3d 8 (2d. Cir. 2000) ............................................................................ 7

*In re GE/CBPS Data Breach Litig.*,
   2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021).............................................. 14, 19

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
   822 F. Supp. 2d 368 (S.D.N.Y. 2011) ........................................................ 7, 8

*Izquierdo v. Panera Bread Co.*,
   450 F. Supp. 3d 453 (S.D.N.Y. 2020) ......................................................... 15

*Jetro Holdings, LLC v. MasterCard Int'l, Inc.*,
   166 A.D.3d 594 (2d Dep't 2018)................................................................. 22

*Kraft v. Staten Is. Boat Sales, Inc.*,
   715 F. Supp. 2d 464 (S.D.N.Y. 2010) ......................................................... 12

*Liberty Media Corp. v. Vivendi Universal*, S.A.,
   923 F. Supp. 2d 511 (S.D.N.Y. 2013) ......................................................... 13

*Mexico Infrastructure Finance, LLC v. Corporation of Hamilton*,
   2019 WL 1206690 (S.D.N.Y. Mar. 14, 2019).............................................. 23

*Mill-Run Tours, Inc. v. Windstream Servs. LLC*,
   2017 WL 2930932 (S.D.N.Y. July 7, 2017).............................................. 9, 12

*Polk v. Del Gatto, Inc.*,
   2021 WL 3146291 (S.D.N.Y. July 23, 2021).............................................. 20

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009) ........................................................... 20

*Sky Acres Aviation Servs, Inc. v. Styles Aviation, Inc.*,
  210 A.D.2d 393 (2d Dep't 1994) ................................................... 12

*Smahaj v. Retrieval- Masters Creditors Bureau, Inc.*,
  131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) ........................................ 14

*Smith v. Chase Manhattan Bank, USA*,
  293 A.D.2d 598 (2d Dep't 2002) ................................................... 21

*Toretto v. Donnelley Fin. Sols., Inc.*,
  2022 WL 348412 (S.D.N.Y. Feb. 4, 2022) .................................... 14

*Turbo Enterprises, Inc. v. Structuretone (UK), Inc.*,
  2008 WL 2472175 (N.Y. Sup. Ct. June 09, 2008) ........................ 12

*Valentini v. Citigroup, Inc.*,
  837 F. Supp. 2d 304 (S.D.N.Y. 2011) ........................................... 24

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ............................................... 8

*Wiener v. Unumprovident Corp.*,
  202 F. Supp. 2d 116 (S.D.N.Y. 2002) ........................................... 18

*Wolff v. Rare Medium, Inc.*,
  210 F. Supp. 2d 490 (S.D.N.Y. 2002) ........................................... 11

*Xerox Corp. v. JoJoMonster Graphics, LLC*,
  2017 WL 3895907 (W.D.N.Y. Sept. 6, 2017) ............................... 13

**Statutes**

FTCA, Section 5 ..................................................................... 14, 19, 20

New York GBL § 349 .................................................................. *passim*

New York GBL § 601(6) .................................................................... 19

U.C.C. § 2-316 .................................................................................. 11

**Rules & Regulations**

23 NYCRR 200.................................................................................................................... 19

23 NYCRR 500.................................................................................................................... 19

23 NYCRR 500.20............................................................................................................... 19

Fed. R. Civ. P. 12(b)(6)............................................................................................... 1, 6, 11

Defendant Uphold HQ, Inc. ("Defendant" or "Uphold"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion to dismiss the Class Action Complaint, Dkt. No. 1 ("Complaint" or "Compl.") of plaintiffs and proposed class representatives Theodore Rider ("Rider"), Jesse W. Smith ("Smith"), and Gilles Boevi ("Boevi") (collectively, "Plaintiffs"), pursuant to Federal Rules of Civil Procedure ("Rule") § 12(b)(6) for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

Despite the involvement of cryptocurrency, and cyber-security terms such as two-factor authentication ("2FA"), this case is straightforward; Plaintiffs had their assets stolen by third-party criminals and want to blame Uphold for it.

Uphold is a financial services company that provides an online platform allowing its customers to buy, hold, and exchange traditional fiat currencies (government-backed money such as the U.S. Dollar or British Pound), cryptocurrencies (such as Bitcoin), commodities (such as gold and silver), and other financial products. Plaintiffs are (or were) customers of Uphold, and each have (or had) accounts with Uphold where they traded and stored cryptocurrency.[1]

In this action, Plaintiffs each allege that (i) unknown third-party cybercriminals gained access to their respective Uphold accounts, (ii) these cybercriminals gained such access to their Uphold accounts using Plaintiffs' self-created and self-maintained, but ultimately compromised, passwords, and (iii) these cybercriminals unlawfully transferred cryptocurrency out of Plaintiffs' Uphold account(s), causing financial damages to Plaintiffs. In other words, these cybercriminals are alleged to have accessed Plaintiffs' accounts though the "front door" (*i.e.* using Plaintiffs'

---

[1] A cryptocurrency is a digital asset exchanged through a computer network that is not reliant on any central authority, such as a government or bank.

compromised access credentials) and not through Uphold's systems (or through the "back door"), where these cybercriminals would have been able to access all data, information, and records held on Uphold's systems.

Against this backdrop, and notwithstanding each plaintiff's own negligence in failing to properly secure their own account credentials, Plaintiffs maintain that Uphold is entirely responsible for the alleged loss of Plaintiffs' cryptocurrency.

Plaintiffs assert seven causes of action in their Complaint: (1) negligence; (2) negligence *per se*; (3) violation of New York General Business Law ("GBL") § 349; (4) unjust enrichment; (5) breach of contract; (6) breach of warranty; and (7) negligent misrepresentation.  In support of nearly all of their seven claims, Plaintiffs cite to Uphold's purported statements about its security practices and allege that Uphold failed to live up to those statements.  But Plaintiffs' allegations are both legally and factually deficient.

First and foremost, nearly all of the cited statements by Uphold about Uphold's own cyber-security address "back door" security protocols, *i.e.*, attempts by third-parties to access Uphold's entire corporate environment, and not its customers' failure to secure their own login information.  As noted above, Plaintiffs do not allege that Uphold itself suffered a cybersecurity incident resulting in unauthorized access, so Plaintiffs' citation to these "back door" security statements is entirely disingenuous.

Regardless, none of the alleged statements cited by Plaintiffs (whether discussing Uphold's "front door" or "back door" security) rise to the level of an actionable promise or guaranty by Uphold.  And, in the one instance where Uphold stated that it received and maintained a specific security certification, Uphold was in fact certified, and Plaintiffs do not allege otherwise.

Plaintiffs next cite to Uphold's alleged violations of certain State and federal regulations in support of their negligence *per se* and GBL § 349 claims.  Notwithstanding that Uphold denies that it violated these regulations, the cited regulations do not create private rights of action, so Plaintiffs' claims premised on these regulations are not properly before this Court.

Finally, in a last-ditch effort to establish some sort of and enhanced duty on Uphold's part, Plaintiffs spend nearly twenty pages of their Complaint reciting to obscure "standards" that Plaintiffs allege Uphold failed to meet.  Uphold, however, never promised or guaranteed it would satisfy Plaintiffs' self-selected standards, nor was Uphold required to do so in any contractual or non-contractual context.

Plaintiffs' assertions that Uphold should be held entirely liable for (i) Plaintiffs' failure to secure their own account credentials, and (ii) the subsequent loss of their cryptocurrency assets arising from Plaintiffs own negligence, is both disingenuous and not properly the subject of a class action, as the individual analysis of Plaintiffs' negligence in securing their account access information will predominate the assignment of liability (and all other legal and factual issues) in this action.

## SUMMARY OF RELEVANT FACTS

As pled by Plaintiffs, this action is about assigning responsibility for the unauthorized access to certain individual Uphold accounts by cybercriminals, and the theft of assets arising therefrom, where the individual account credentials were compromised by Uphold customers themselves.  Compl. ¶¶228, 234.

As noted in the Complaint, when members of the putative class signed up for their Uphold accounts, they agreed to the following provision in Uphold's General Terms and Conditions:

You agree that you are responsible for all activities that occur under your Login Credentials. You are responsible for maintaining the confidentiality of your Login Credentials and you agree not to share your Login Credentials with any unauthorized parties.

*See* Compl. Ex. C, ¶1.2.

The Complaint also sets forth the importance of protecting individual login credentials, noting that "81% of all data breaches" are the result of "stolen, weak, or default passwords." Compl. ¶58; *see also* Compl. ¶¶45-50 (acknowledging the increasing prevalence of cryptocurrency fraud and account takeovers).

The Complaint then proceeds to set forth a multitude of statements by Uphold touting its security protocols, including, for example, the following:

- "We deploy layered defenses to limit the scope and depth of potential attacks, as well as sophisticated encryption." Compl. ¶52(a);

- "Security professionals routinely conduct security audits and penetration testing of our systems." *Id*. ¶52(b); and

- "All our providers undergo appropriate due diligence checks. Special attention is paid to integrations incorporating sensitive data." *Id*. ¶52(c).[2]

*See, generally*, Compl. ¶¶52.  The Complaint asserts that these statements, because they allegedly turned out to be untrue, are actionable.  Compl. ¶¶258, 285-288, 290-294, and 299-302.

In addition to Uphold's generalized security statements, Plaintiffs' allegations focus substantially on the purported failure of Uphold's data security measures, specifically with respect to its two-factor authentication (2FA).  In this regard, Plaintiffs first reference certain "standards" that Plaintiffs believe Uphold should have met, but failed to do so, including those of the "World

---

[2] As is obvious from the language referenced, these particular statements pertain to Uphold's dedication to preventing "back door" breaches of its own systems, and not "front door" breaches of Plaintiffs' individual accounts.

Wide Web Consortium," "FIDO Alliance," and the "National Institute of Standards and Technology."  *See* Compl. ¶¶57, 73, 80, 84, 85.[3]  Plaintiffs proceed to assert that because Uphold did not meet these standards, Uphold is liable to Plaintiffs.  Compl. ¶¶232, 236, 258, 285-288, 290-294, 299-302.

Plaintiffs next reference certain State and federal statutes that Uphold purportedly violated, specifically the Federal Trade Commission Act ("FTCA") and the New York Department of Financial Services ("NYDFS") regulations pertaining to virtual currency and cybersecurity.  *See* Compl. ¶¶230-231, 257.  Plaintiffs assert that by Uphold purportedly violating these statutes, it renders Uphold liable to Plaintiffs.  Compl. ¶¶230, 241-253, 257. [4]

Finally, Plaintiffs reference the Payment Card Industry Data Security Standards ("PCI DSS") and discuss at length what compliance with the PCI DSS entails.  Compl. ¶¶63, 81, 82.[5] Although Plaintiffs never specifically allege that Uphold is not in fact PCI DSS certified, Plaintiffs proceed to assert that Uphold's reference to its PCI DSS certification is actionable and makes Uphold liable to Plaintiffs.  Compl. ¶¶244-245, 258, 285, 290.[6]

---

[3]  Several of these purported "standards" are not actually standards at all, but merely guidance and suggested practices with which Uphold is not obligated to comply.  The only 2FA protocols that Plaintiffs allege Uphold agreed to adhere to were those posted on Uphold's support website (Compl. ¶89), and there is no allegation in the Complaint that Uphold violated those.

[4]  Uphold denies these allegations, and also notes that these statutes do not provide private causes of action permitting Plaintiffs to sue Uphold herein.

[5]  Notably, Plaintiffs quote from (and link to) an "information supplement" to the PCI DSS standards, not the PCI DSS standards themselves.  *See* Compl. ¶81, fn.10.  The information supplement explicitly provides that it "does not replace or supersede requirements in any PCI SSC Standard."  *Id.*

[6]  Uphold offers a debit card to its customers, so the PCI DSS certification is important to Uphold.  It is unclear, however, why these Payment Card Industry Data Security Standards (PCI DSS), which as the name suggests are specifically for the payment card industry, apply to Plaintiffs' claims herein involving the theft of cryptocurrency.

## **LEGAL STANDARD**

Pursuant to Rule 12(b)(6), the Court must dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff fails to set forth sufficient facts to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Indeed, "the complaint must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc*., 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S., at 679).  Accordingly, a complaint must contain "more than an unadorned the-defendant-unlawfully-harmed-me accusation," and such assertions are insufficient when supported only by conclusory statements.  *Iqbal*, 556 U.S., at 678.

The plausibility standard plays a particularly important role in cases like this one—large class actions that will necessarily involve burdensome and costly discovery.  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.  A court should not delay analysis of a plaintiff's threadbare complaint, on the expectation that "a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'" *Twombly*, 550 U.S., at 559 (citation omitted).  Moreover, Plaintiffs should not be permitted to "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value" based upon a set of allegations that will never satisfy class action requirements. *Id*. at 557-58 (internal quotation marks and citation omitted).

## ARGUMENT

### I.     PLAINTIFFS' CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION (COUNT SEVEN) MUST BE DISMISSED

#### A.     Plaintiffs Fail to Allege a Special Relationship

Under New York law, to prevail on a negligent misrepresentation claim, a plaintiff must plead and prove that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d. Cir. 2000).

Here, Plaintiffs do not even attempt to allege—nor could they—a "special relationship" between Uphold and its customers that would give rise to a claim of negligent misrepresentation. *See* Compl. ¶¶297-302.  To adequately plead a special relationship, a plaintiff must show that the relationship between the parties involved a level of trust beyond that of an "ordinary business relationship." *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 387-388 (S.D.N.Y. 2011).

Where, as here, a plaintiff fails to plead such a relationship, dismissal of a negligent misrepresentation claim is required.  *Arthur Props., S.A. v. ABA Gallery, Inc.*, 2011 WL 5910192, at *4 (S.D.N.Y. Nov. 28, 2011) (dismissing negligent misrepresentation claim because plaintiffs failed to allege a special relationship existed between the parties).

#### B.     Plaintiffs' Claim is Barred by the Economic Loss Doctrine

In addition to their failure to plead a special relationship, Plaintiffs' negligent misrepresentation claim should be dismissed as barred by the economic loss doctrine.  Under New

York law, the economic loss doctrine precludes a negligent misrepresentation claim that seeks purely economic damages. *See Cnty. of Suffolk. v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984) ("New York law holds that a negligence action seeking recovery for economic loss will not lie."); *see also Gordon v. Hain Celestial Grp., Inc.*, 2017 WL 213815, at *6 (S.D.N.Y. Jan. 18, 2017) (dismissing negligent misrepresentation claim where "the only cognizable injury alleged in connection with plaintiff's negligent misrepresentation claim is economic loss"); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (dismissing negligent misrepresentation claim because plaintiff alleged only economic loss, as opposed to personal injury or injury to property).

Here, the only injury Plaintiffs allege in connection with their negligent misrepresentation claim is the "loss of their funds." Compl. ¶302. Accordingly, this claim should be dismissed on this independent ground.

### C.       Plaintiffs Fail to Allege Reliance

Plaintiffs have not, because they cannot, allege facts supporting the conclusion that each member of the class relied on (or even knew about) the alleged misrepresentations cited in the Complaint. Instead, Plaintiffs allege, in conclusory fashion, that the misrepresentations "were material, in that Plaintiffs and the Class would not have used Uphold's services if they had known that the security measures were inadequate." Compl. ¶301. "These are just the sort of 'threadbare recitals of the elements of a cause of action' and 'conclusory statements,' that do not suffice to state a claim." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173-74 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S., at 662).

Indeed, courts routinely hold that such conclusory allegations of reliance, like those alleged here, are insufficient to state a claim. *See, e.g., Int'l Fund Mgmt. S.A.*, 822 F. Supp. 2d, at 386

(dismissing statutory, fraud, and negligent misrepresentation claims for failure to allege reliance where plaintiffs alleged "in connection with [their] purchases of Securities after February 23, 2007, Plaintiffs and/or their investment managers read and relied upon Citi's 2006 Form 10-K, including the false financial statements and other statements alleged herein to be false or misleading"); *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 422 (E.D.N.Y. 2010) (dismissing negligent misrepresentation claim where plaintiff "merely states, in conclusory fashion, that she 'reasonably relied upon defendants' representations'"); *DeBlasio v. Merrill Lynch & Co.*, 2009 WL 2242605, at *24, n.15 (S.D.N.Y. July 27, 2009) (dismissing fraud claim based on "conclusory assertion that 'Plaintiffs and other Class members justifiably relied upon such misrepresentations, concealment and omissions to their damage and detriment'").

Plaintiffs have failed to adequately allege reliance even with respect to themselves, much less on a class-wide basis.  *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 772 (W.D.N.Y. 2017) (dismissing plaintiffs' negligent misrepresentation claim based on "the conclusory assertion that, '[i]n reliance upon Defendants [sic] misrepresentations, Plaintiffs and Statewide Class Members purchased insurance or health benefit services from Defendants'") (citation omitted).  As such, for this additional independent reason, the negligent misrepresentation claim should be dismissed.

## II.    PLAINTIFFS' CAUSE OF ACTION FOR BREACH OF WARRANTY, EXPRESS AND IMPLIED (COUNT SIX) MUST BE DISMISSED

### A.    New York Law Does Not Recognize Breach of Warranty Claims Arising from the Provision of Services

Plaintiffs' warranty claims should be dismissed, under New York law, because "express and implied warranties apply only to the sale of goods; there is no cause of action for breach of warranty in the performance of a service."  *Mill-Run Tours, Inc. v. Windstream Servs. LLC*, 2017

9

WL 2930932, at *4 (S.D.N.Y. July 7, 2017); *see also B.C.F. Oil Ref. v. Consolidated Edison Co.*, 982 F. Supp. 302, 308 (S.D.N.Y. 1997) ("[A]ll transactions where service predominates are indeed immune from express and implied warranty analysis."); *Gutarts v. Fox*, 104 A.D.3d 457, 459 (1st Dep't 2013) ("[T]here is no cause of action for breach of warranty where the defendant has only provided a service."); *Aegis Prods., Inc. v. Arriflex Corp. of Am.*, 25 A.D.2d 639, 639 (1st Dep't 1966) ("No warranty attaches to the performance of a service.").

Uphold is strictly a service provider and does not sell goods to its customers.  Plaintiffs' themselves recognize this in both the Complaints' description of Uphold—"a cryptocurrency exchange that allows users to transfer, purchase, trade, hold, and sell various cryptocurrencies on its platform" (Compl. ¶40)—and in the Complaint's explicit references to the word "service" when describing Uphold's conduct and/or the standards that Uphold allegedly violated. *See, e.g.*, Compl. ¶219 ("Defendants' uniform obligations relating to its <u>cryptocurrency exchange services</u> apply equally to Plaintiffs and all Class Members."); ¶227 ("Upon accepting and storing Plaintiffs' private information and cryptocurrency on its <u>service</u>, Uphold undertook and owed to Plaintiffs and the Class members a duty to exercise reasonable care…."); ¶256 ("[GBL § 349] applies to all consumer disputes with respect to their use of Uphold's website and <u>services</u>…."); ¶292 ("This promise and/or description became part of the basis for the bargain by which Plaintiffs and the Class Members used Uphold's <u>services</u>."); ¶295 ("…Uphold's misrepresentations are a material reason that Plaintiffs and the Class Members utilized Uphold's <u>service</u> and paid Uphold's fees."); ¶296 ("…Plaintiffs would not have used Uphold's <u>services</u> had Plaintiffs' been aware that Uphold's security protocols were different than those represented."); ¶298 ("Uphold owed Plaintiffs and the Class Members a duty of care not to misrepresent facts and characteristics of its

services."); ¶301 ("…the Class Members would not have used Uphold's <u>services</u> if they had known that the security measures were inadequate.") (emphasis added to all Complaint citations).

Accordingly, the Court should dismiss Plaintiffs' breach of warranty claims as prohibited under New York law.

### B.   Uphold Disclaimed All Implied Warranties

Even assuming, *arguendo*, that implied warranties apply to service relationships under New York law, Plaintiffs' claim still fails because Uphold disclaimed all such implied warranties.

New York law is clear that a conspicuous, specific exclusion of implied warranties within an agreement is sufficient to defeat a claim of breach of implied warranty. *Citicorp Leasing, Inc. v. Kusher Family Ltd. P'ship*, 2006 WL 1982757, at *5 (S.D.N.Y. Jul. 14, 2006); U.C.C. § 2-316.

Here, Section 11.1 of the General Terms and Conditions posted on Uphold's website provides, in pertinent part:

> THE PLATFORM IS PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS WITHOUT ANY REPRESENTATION OR WARRANTY, WHETHER EXPRESS, IMPLIED OR STATUTORY. WE SPECIFICALLY DISCLAIM ANY IMPLIED WARRANTIES OF TITLE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. WE DO NOT MAKE ANY REPRESENTATIONS OR WARRANTIES THAT ACCESS TO ANY PART OF THE PLATFORM, OR ANY OF THE MATERIALS CONTAINED THEREIN, WILL BE CONTINUOUS, UNINTERRUPTED, TIMELY, ERROR-FREE, OR SECURE.[7]

*See* Bianco Decl., Ex. A.

---

[7] Plaintiffs attached only selected pages from the General Terms and Conditions to their Complaint. *See* Compl., Ex. C. The page from the General Terms and Conditions containing the above disclaimer was not included in Plaintiffs exhibit, therefore, it is attached as Exhibit A to the Declaration of Benjamin D. Bianco ("Bianco Decl."), filed herewith. The Court can consider this page from the General Terms and Conditions in deciding this 12(b)(6) motion because portions of the document are attached to, referenced in, and are integral to the Plaintiffs' Complaint. *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002).

Such a disclaimer is effective, under New York law, to disclaim any implied warranties. *See, e.g., Kraft v. Staten Is. Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) (finding that disclaimer of warranties in which the words "merchantability" and "fitness for a particular purpose" were "conspicuously provided…in all capital letters," "effectively waived any implied warranties"); *Mill-Run Tours, Inc.*, 2017 WL 2930932, at *3 (same); *Sky Acres Aviation Servs, Inc. v. Styles Aviation, Inc.*, 210 A.D.2d 393, 394 (2d Dep't 1994) (finding that disclaimer of warranties of merchantability and fitness and statement that sale was "as is" effectively disclaimed any implied warranties).

Thus, the Court should dismiss Plaintiffs' implied warranty claim for the additional reason that any alleged implied warranties were expressly disclaimed.

### C.    Plaintiffs Fail to Specify the Terms of the Express Warranties Upon Which They Purportedly Relied

In addition to the foregoing reasons meriting dismissal of the warranty claim, Plaintiffs do not meet the most basic threshold in pleading the elements of an express warranty claim against Uphold.  To state a claim for breach of express warranty under New York law, "a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).  Most importantly, a plaintiff asserting a breach of express warranty claim "must set forth the terms of the warranty upon which it relied." *Id.*; *see also Turbo Enterprises, Inc. v. Structuretone (UK), Inc.*, 2008 WL 2472175 at *5 (N.Y. Sup. Ct. June 09, 2008) (dismissing breach of express warranty claim where plaintiff failed to identify the terms of the express warranty on which it relied); *Goldin v. Smith & Nephew, Inc.*, 2013 WL

1759575, at *6 (S.D.N.Y. Apr. 24, 2013) (dismissing express warranty claim where the plaintiff failed to allege "with sufficient specificity the requisite representation by [the defendant]").

In support of their warranty claim, Plaintiffs merely copied and pasted the same deficient allegations cited in support of their failed contract claim (addressed *infra*), regarding Uphold's alleged statements on its website about its data security measures.  S*ee* Compl. ¶¶285-286, *compare* ¶¶290-291.  As explained below (*see* Sections IV(A) and VII(A) (*infra*)), Uphold's purported statements on its website and in promotional materials regarding its commitment to security do not constitute actionable statements of fact amounting warranties or legally binding promises.

Thus, Plaintiffs' express warranty claim fails for the further reason that Plaintiffs fail to identify any material statement amounting to an express warranty.

### D.    Plaintiffs' Express Warranty Claim is Duplicative of Their Contract Claim

Finally, Plaintiffs' claim for breach of an express warranty merely duplicates their breach of contract claim.  A claim for breach of warranty already sounds in contract.  *Liberty Media Corp. v. Vivendi Universal, S.A.*, 923 F. Supp. 2d 511, 516 (S.D.N.Y. 2013) (quoting *CBS Inc. v. Ziff-Davis Pub. Co.*, 75 N.Y.2d 496, 503 (1990)).  Therefore, a claim for breach of express warranty which relies upon the same facts and seeks the same damages as a breach of contract claim is merely duplicative of the latter.  *Xerox Corp. v. JoJoMonster Graphics, LLC*, 2017 WL 3895907, at *6 (W.D.N.Y. Sept. 6, 2017) (dismissing claims for breach of express and implied warranty).

Given that Plaintiffs' breach of express warranty claim is premised on the exact same operative facts as their contract claim (*see* Compl. ¶¶285-287, *compare* ¶¶290-291) and seeks the same damages (*see* Compl. ¶288, *compare* ¶295), it should be dismissed for the additional reason that it is duplicative.

III.   **PLAINTIFFS' CAUSE OF ACTION FOR NEGLIGENCE *PER SE*
        (COUNT TWO) MUST BE DISMISSED**

   A.   **The Statutes Plaintiffs Rely Upon for This Claim Lack a Private Right of
         Action**

In support of their negligence *per se* claim, Plaintiffs aver that Uphold violated Section 5

of the FTCA by failing to "implement reasonable security measures and in its abandonment of

industry standards regarding the protection of its users' private information."  Compl. ¶ 234.  In *In

re GE/CBPS Data Breach Litig.*,[8] however, this Court held—in dismissing plaintiff's negligence

*per se* claim—that "Section 5 [of the FTCA] <u>does not provide for a private right of action</u>; instead,

the FTCA confers exclusive enforcement authority on the Federal Trade Commission."  *Id.*

(emphasis added); *see also Toretto v. Donnelley Fin. Sols., Inc.*, 2022 WL 348412, at *15

(S.D.N.Y. Feb. 4, 2022) (dismissing negligence *per se* claim due to no private right of action under

Section 5 of FTCA); *Cohen v. Ne. Radiology P.C.*, 2021 WL 293123, at *7 (S.D.N.Y. Jan. 28,

2021) (determining that the absence of a private right of action under the FTCA "weighs heavily

against implying a private right of action necessary to sustain a negligence *per se* claim" and

dismissing such claim accordingly); *Smahaj v. Retrieval- Masters Creditors Bureau, Inc.*, 131

N.Y.S.3d 817, 827 (N.Y. Sup. Ct. 2020) (dismissing a negligence *per se* claim based on an alleged

violation of the FTCA because "if mere proof of a violation of [the statute] were to establish

negligence *per se*, plaintiff would effectively be afforded a private right of action that the statute

does not recognize") (internal quotation marks and alterations omitted)).

Plaintiffs' attempt to bring claims against Uphold for Uphold's alleged failure to "monitor

customer transactions and report any suspicious activities" under the Bank Secrecy Act ("BSA")

(*see* Compl. ¶¶248-249) is equally futile.  Indeed, this Court has explicitly held that "the anti-

---

[8]  2021 WL 3406374, at *10 (S.D.N.Y. Aug. 4, 2021).

money-laundering obligations of banks, as established by the Bank Secrecy Act, obligate banks to report certain customer activity to the government but <u>do not create a private cause of action permitting third parties to sue</u> for violations of the statute." *Frankel-Ross v. Congregation OHR Hatalmud*, 2016 WL 4939074, at *5 (S.D.N.Y. Sept. 12, 2016) (emphasis added) (dismissing claim based on violation of BSA for failure to implement proper suspicious activity reporting program).

Thus, this court should dismiss Plaintiffs' negligence *per se* claim as neither of the statutes upon which this claim is premised provide for (explicitly or implicitly) a private right of action.

## IV.     PLAINTIFFS' CAUSE OF ACTION FOR VIOLATION OF GBL § 349 (COUNT THREE) MUST BE DISMISSED

### A.     Plaintiffs Have Not Plausibly Alleged Materially Deceptive or Misleading Conduct

GBL § 349 is a consumer-protection statute, and not a mechanism for enforcing contractual rights or turning innocuous statements into binding guarantees.  Under GBL § 349, in addition to pleading and proving actual injury, a plaintiff must allege that defendant "engaged in a consumer-oriented act or practice that was *deceptive or misleading in a material way*."  *Abdale v. North Shore Long Island Jewish Health System, Inc.*, 49 Misc. 3d 1027, 1039 (N.Y. Sup. Ct. 2015) (emphasis added); *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 284 (S.D.N.Y. 2014).   A "deceptive act or practice" has been defined as "a representation or omission" that is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020) (internal quotation marks omitted).  A "plaintiff may not maintain a cause of action under General Business Law § 349 where…[it] has failed to identify any 'material' 'deceptive acts' engaged in by the defendant."  *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (quoting *Benjaminov v. Republic Ins. Group*, 241 A.D.2d 473, 474 (2d Dep't 1997)).

In *Abdale*, patients brought an action against healthcare facilities after their confidential personal and medical information was taken by a third-party in a data breach.  49 Misc. 3d, at 1039.  The *Abdale* court held that the company's failure to prevent personal information from being stolen, despite statements that the company had protocols in place to prevent such loss, "did not mislead the plaintiffs in any material way," and thus was not deceptive or misleading conduct under GBL § 349.  *Id.*   This was so because "the statements allegedly made by defendants in the privacy policy and online notices did not constitute an unlimited guaranty that patient information could not be stolen or that computerized data could not be hacked," and thus there had been no deceptive conduct.  *Id.*; *see also Corcino v. Filstein*, 32 A.D.3d 201, 202 (1st Dep't 2006) (finding doctor's advertisement was not materially deceptive conduct where he did not guarantee results or claim there were no risks to the offered medical procedure).

Here, as in *Abdale*, Plaintiffs do not identify any specific statements contained on Uphold's website or mobile application, or in Uphold's promotional materials or blog articles, that provide an "unlimited guaranty," or any guaranty at all, that Plaintiffs' accounts could never, under any circumstances, be accessed by an unauthorized third party.  *Id.* at 1039.  Indeed, Plaintiffs merely allege that Uphold misrepresented "the safety of its systems and services" (Compl. ¶258) by making such statements as: (i) "[w]e deploy layered defenses to limit the scope and depth of potential attacks, as well as sophisticated encryption," (ii) "Uphold is a pioneer in our space when it comes to the security of our consumers," and (iii) "[The Uphold] brand represents our commitment to consumer protection and true transparent financial services accountability" (Compl. ¶52).  None of these statements, or any of Uphold's other alleged statements, amount to an "unlimited guaranty."  And, there is no allegation in the Complaint that Uphold—at any time— abandoned its responsibility to safeguard its customers' information and assets.

Any reasonable consumer of cryptocurrency knows that virtual currencies are particularly susceptible to security threats.   Indeed, Plaintiffs themselves admit to the data security issues inherent in digital currency.   *See* Compl. ¶¶46-47 ("blockchain-related hacks…in 2020…result[ed] in nearly $3.78 billion in total losses. … Wallet-based theft accounted for over $3 billion of the $3.78 billion stolen in total."); Compl. ¶49 ("Since 2020…[t]he financial service industry saw an 850% increase in account takeovers…."); Compl. ¶50 ("…as of late 2021, cryptocurrency account takeovers have become so prevalent that they account for 39% of all digital fraud.").   Against this backdrop, Plaintiffs are attempting to turn Uphold's nonactionable statements of commitment to data security, which has always been Uphold's highest priority, into absolute guarantees of account security that do not exist anywhere in the cryptocurrency space.   The Court should not indulge them.

With respect to the statements themselves, Plaintiffs have not, because they cannot, allege why or how any of the cited statements were false or misleading.   *Horowitz*, 613 F. Supp., at 287 (dismissing GBL § 349 claim where plaintiff made "no reference to the specific acts, representations and/or omissions that she claim[ed] are deceptive nor d[id] she allege why these acts were deceptive").   For example, one of Uphold's statements that Plaintiffs claim is false and misleading is the following:

> Uphold is a pioneer in our space when it comes to the security of our consumers: we are one of the first companies working with digital currencies to become certified to PCI/DSS [the Payment Card Industry Security Standards Council], one of the most stringent security standards in the industry. Being compliant means that we are doing our very best to keep our members' valuable information secure and out of the hands of people who could use that data in a fraudulent way.

Compl. ¶52(h).   Plaintiffs do not allege anywhere in the Complaint that anything in this statement was false, particularly when this statement was made.   Moreover, there is no allegation in the Complaint that Uphold—at the time this statement was made—was not (1) a pioneer in security,

(2) one of the first companies to become certified to PCI/DSS, and (3) doing its very best to keep its members information out of the hands of cybercriminals. To state a claim under GBL § 349, it is not enough to allege, as Plaintiffs attempt to do here, that a defendant made a statement that is later proved to be inaccurate based upon subsequent events.[9] *Ellinghaus v. Educ. Testing Serv.*, 2016 WL 8711439, at *8 (E.D.N.Y. Sept. 30, 2016) (dismissing GBL § 349 claim because defendants statements concerning the reliability of SAT scores were not misleading at the time they were made, despite subsequent events); *see also Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 121 (S.D.N.Y. 2002) (finding that where disability insurer paid allegedly promised benefits for eight years and then stopped, plaintiff failed to state a GBL § 349 claim because "it [could not] be said that defendants sold disability insurance they never intended to provide"). Here, Plaintiffs fail to allege facts suggesting that Uphold did not have a commitment to data security at the time the alleged statements in question were made, nor do Plaintiffs specifically allege that Uphold was not PCI/DSS certified at any time.

Accordingly, this claim should be dismissed because Plaintiffs do not allege that Uphold engaged in materially deceptive or misleading conduct, at the time Uphold's purported statements were made, as required by GBL § 349.

**B.      Violations of Other Statutes With No Private Right of Action Do Not Support Plaintiffs' GBL § 349 Claim**

Plaintiffs also allege that Uphold violated GBL § 349 by purportedly violating several other statutes, including the FTCA and the NYDFS regulations pertaining to virtual currency and cybersecurity. Compl. ¶¶257. This allegation has no merit, however, because a plaintiff cannot

---

[9] Notwithstanding Plaintiff's allegations, it is Uphold's position that each of these statements was not only true when made but continue to be true today.

state a GBL § 349 claim merely by alleging violations of statutes that do not themselves provide for a private right of action.  *See Conboy v. AT&T Corp.*, 84 F. Supp. 2d 492, 506 (S.D.N.Y. 2000).

In *Conboy*, the court rejected the plaintiffs' attempt to use GBL § 349 as a mechanism to allege liability under another statute (GBL § 601(6)), which does not provide for a private right of action.  *Id*.  The court held "[a]llowing plaintiffs to plead a cause of action under Section 601(6) by alleging that a violation of that statute necessarily constitutes a deceptive act under Section 349 appears contrary to the New York Legislature's intent and inconsistent with the statutory scheme." *Id*.  Moreover, Plaintiffs "cannot thwart legislative intent by couching [other statutory claims] as a [GBL § 349] Claim."  *See Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001).

Here, Plaintiffs engage in the precise conduct prohibited by *Conboy*, *i.e.*, alleging purportedly deceptive and misleading conduct under GBL § 349, by asserting violations of other statutes that do not provide for a private causes of action.  *Id.*; *see, e.g., Abdale*, 49 Misc. 3d, at 1038-39 (dismissing causes of actions under GBL § 899-aa and HIPAA because no private right of action existed, and also dismissing cause of action under GBL § 349).

As discussed above (Section III, *supra*), Section 5 of the FTCA does not provide for a private right of action.  *See In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *10.  The NYDFS regulations, 23 NYCRR 200 and 23 NYCRR 500, likewise do not create a private right of action, as the enforcement and administration of those regulations is vested solely in the Superintendent of the NYDFS.  *See* 23 NYCRR 500.20 ("This regulation will be enforced by the superintendent pursuant to, and is not intended to limit, the superintendent's authority under any applicable laws.").

Accordingly, to the extent that Plaintiffs' GBL § 349 is premised upon Uphold's alleged violations of Section 5 of the FTCA or NYDFS regulations, the claim fails as a matter of law because those statutes do not provide for private rights of action.

### C.   Plaintiffs' GBL § 349 Claim is Duplicative of Their Contract Claim

As noted above, GBL § 349 cannot be used to enforce ordinary contract rights.  In other words, to establish a GBL § 349 claim, Plaintiffs have to allege an injury specifically attributable to the alleged consumer-oriented deception—*i.e.*, a loss that is "independent of the loss caused by the alleged breach of contract." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *Polk v. Del Gatto, Inc*., 2021 WL 3146291, at *11 (S.D.N.Y. July 23, 2021) (dismissing GBL § 349 claim as duplicative of breach of contract claim because injuries alleged were identical); *Fleisher v. Phoenix Life Ins. Co*., 858 F. Supp. 2d 290, 305 (S.D.N.Y. 2012) (same).

Here, Plaintiffs' GBL § 349 and breach of contract claims are effectively identical.  Both turn on the same conduct, *i.e.*, Uphold's alleged failure to properly secure Plaintiffs' accounts. *See* breach of contract claim: Compl. ¶285 ("Uphold promised to consumers on its website, mobile application, promotional materials, and in its blog articles, that it was an industry leader in ensuring account security…and that it employed numerous safeguards to protect against unauthorized account access.") and Compl. ¶284 ("Uphold breached its contracts with Plaintiffs…by failing to properly secure [Plaintiffs'] accounts against unauthorized access by a cybercriminal."); *compare with* GBL § 349 claim: Compl. ¶ 258 ("Uphold violated NYGBL 349 by misrepresenting, both by affirmative representation and by omission, the safety of its systems and services…") and Compl. ¶260 ("Uphold also violated NYGBL 349 by failing to implement reasonable and appropriate security measures or to adequately follow industry standards for data security…").

When two claims are based on the exact same conduct, they "are likely to involve similar injury." *Fleisher*, 858 F. Supp. 2d, at 305. Here, both the breach of contract claim and the GBL § 349 claim allege economic loss from Uphold's purported failure to adequately secure Plaintiffs' accounts. *See* Compl. ¶266 and ¶288. Given that Plaintiffs have failed to plead an injury *independent of the loss caused by the alleged breach of contract*, the Court should dismiss Plaintiffs' GBL § 349 claim as duplicative of the contract claim.

## V.   PLAINTIFFS' CAUSE OF ACTION FOR UNJUST ENRICHMENT (COUNT FOUR) MUST BE DISISSED

### A.   Plaintiffs Fail to Allege They Received Less Than That for Which They Bargained

To succeed on a claim of unjust enrichment, a plaintiff must show that "(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Buonasera v. Honest Co*., 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016). In turn, a plaintiff must allege "that the benefits [he] received were less than what [he] bargained for" or risk dismissal of his claim. *Smith v. Chase Manhattan Bank, USA*, 293 A.D.2d 598, 600 (2d Dep't 2002).

Here, it is undisputed that Plaintiffs paid Uphold transaction fees in exchange for Uphold providing Plaintiffs the ability to "purchase, exchange, and sell cryptocurrencies on Uphold's exchange." Compl. ¶270. The Complaint does not contain a single allegation that Uphold failed to provide Plaintiffs with access to "Uphold's exchange" or that Plaintiffs paid Uphold fees or commissions for any other service. Furthermore, Plaintiffs do not allege that they were unable to purchase or sell their cryptocurrency on "Uphold's exchange" or that their executed transactions failed to process through "Uphold's exchange."

Instead, Plaintiffs allege that they did not receive "protection of their accounts with adequate data security."  Compl. ¶271.  Plaintiffs, however, do not assert any connection between their alleged failure to receive data security and the fees and commissions they paid to Uphold for transactions which processed through "Uphold's exchange."  The failure to allege such a connection is fatal to Plaintiffs' unjust enrichment claim.  *See Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 52 (S.D.N.Y. 2015) (dismissing unjust enrichment where "the connection between the alleged harm to the plaintiffs and the compensation paid to individual defendants is too attenuated"); *DeBlasio*, 2009 WL 2242605, at *40 (dismissing unjust enrichment claim where there was not enough of a nexus between defendant's enrichment and plaintiff's expense); *Jetro Holdings, LLC v. MasterCard Int'l, Inc.,* 166 A.D.3d 594, 598 (2d Dep't 2018) (affirming dismissal of unjust enrichment claim because receipt of alleged benefit was independent of harm purportedly caused to plaintiff, and so "it [could not] be said that [defendant] unjustly benefitted from its action").

Plaintiffs' payment of transaction fees to Uphold on transactions that were indeed processed through "Uphold's exchange" is independent of their alleged security breach claims.  In other words, the transaction fees paid to Uphold by Plaintiffs could not have unjustly enriched Uphold, because Plaintiffs received the benefit of their bargain for those fees, *i.e.*, the processing of the transactions in question through "Uphold's exchange."  As such, the unjust enrichment claim must be dismissed.

## VI.   PLAINTIFFS' CAUSE OF ACTION FOR NEGLIGENCE (COUNT ONE) MUST BE DISMISSED

### A.   Plaintiffs' Negligence Claim is Duplicative of Their Contract Claim

Under New York law, a tort claim must be premised on an independent legal duty extraneous to, and not constituting elements of, a contractual duty.  *Deutsch v. JPMorgan Chase,*

2019 WL 4805689, at *9-10 (S.D.N.Y. Sept. 30, 2019) (Broderick, D.J.) (dismissing negligence claim where alleged duty giving rise to tort was identical to duty giving rise to breach of contract claim); *Mexico Infrastructure Finance, LLC v. Corporation of Hamilton*, 2019 WL 1206690, at *10 (S.D.N.Y. Mar. 14, 2019) (Broderick, D.J.) (dismissing negligence claim where negligent conduct was directly related to performance under contract); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,* 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013) (dismissing negligence claim where "[t]hese duties, which BoA purportedly committed negligently, are specifically contracted for").

In this case, Plaintiffs' negligence claim must be dismissed because the legal duties alleged are entirely duplicative of Uphold's purported contractual duties, *i.e.*, the alleged contractual failure to "properly secure [Plaintiffs'] accounts against unauthorized access by a cybercriminal." Compl. ¶284 (Fifth Cause of Action, Breach of Contract).  Moreover, when alleging the duty breached by Uphold that gives rise to Plaintiffs' negligence claim, Plaintiffs simply parrot the same language they used when describing the duties allegedly owed by Uphold pursuant to the agreements between the parties.  *See* Compl. ¶232 ("Uphold also breached its duty to Plaintiffs and the Class Members to adequately protect and safeguard their accounts….") (First Cause of Action, Negligence); ¶234 ("As a result of Uphold's breaches, cybercriminals were able to gain unauthorized access to Plaintiffs' and the Class Members' accounts.") (First Cause of Action, Negligence).

## VII. PLAINTIFFS' CAUSE OF ACTION FOR BREACH OF CONTRACT (COUNT FIVE) MUST BE DISMISSED

### A. Plaintiffs Fail to Specify Any Contractual Provision That Uphold Allegedly Breached

Plaintiffs' breach of contract claim is legally deficient because Plaintiffs do not—and cannot—cite to any specific provision (in the agreements relevant to this action) breached by

Uphold. *See, e.g. Gillespie v. St. Regis Residence Club*, 343 F. Supp. 3d 332, 340 (S.D.N.Y. 2018) (dismissing breach of contract claim where plaintiffs "[did] not identif[y] any express provision imposing an obligation"); *Hekmat v. U.S. Transportation Security Administration*, 247 F. Supp. 3d 427, 433 (S.D.N.Y. 2017) (dismissing breach of contract claim because plaintiffs could "not point to any language" in the contract that defendant had breached).

Here, instead of identifying specific provisions of the parties' agreements purportedly breached by Uphold, Plaintiffs merely allege that "Uphold breached its [General Terms and Conditions and Privacy Policy] with Plaintiffs…by failing to properly secure their accounts against unauthorized access by a cybercriminal."  Compl. ¶282-¶284.  Moreover, Plaintiffs do not even attempt to tie this purported breach to any specific provisions in the General Terms and Conditions (Compl., Ex. C) or the Privacy Policy (Compl., Ex. I).  Such general, threadbare allegations of breach are insufficient to withstand a motion to dismiss. *Valentini v. Citigroup, Inc*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011) (dismissing breach of contract claim because "conclusory allegations" without a specific "contractual provision" identified are "insufficient to make out a claim for breach of contract").

Identifying the applicable provisions in the contracts is particularly crucial here since Plaintiffs did not attach the entirety of the contracts on which they purportedly base their claim. *See* Compl., Ex. C.  Given Plaintiffs' failure to sufficiently plead exactly what Uphold purportedly breached with respect to the parties' agreements, the breach of contract claim should be dismissed.

## CONCLUSION

For all the foregoing reasons, this Court should dismiss the Complaint in its entirety.

Dated: New York, New York
June 27, 2022

**MEISTER SEELIG & FEIN LLP**

By: _____/s/ Benjamin D. Bianco_____
Benjamin D. Bianco, Esq.
Caitlin R. Trow, Esq.
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Fax: (212) 655-3535
Email: bdb@msf-law.com
        crt@msf-law.com

*Counsel for Defendant Uphold HQ, Inc.*